IN THE UNITED STATES
FEDERAL DISTRICT COURT

1:17 CV 2162

Demetrious A. Frett
    A620151 Petitioner,

v

STATE OF OHIO
    Respondent.

Court Docket: CR-10-544745
               CR-11-552762

JUDGE: Kathleen Ann Sutula

FEDERAL HABEAS CORPUS WITH
A MANDATE ATTACHED WITH A
MANDATORY FEDERAL DNA TEST

---

FEDERAL HABEAS CORPUS WITH A MANDATE ATTACHED
WITH A MANDATORY FEDERAL DNA TEST

---

DISPOSITION:

    Now comes, Demetrious A. Frett, requesting that this Honorable Federal Court grant this Federal Habeas Corpus with a Mandate Attached with a Mandatory Federal DNA Test. Under the circumstances, the court is constrained to assume that were the DNA results in this case submitted to the court, they would have it all on file to be shown at the request of any court & counsel that would review it.

    The effect of such an unqualified submission would have to be substantial (United States v. Jakobetz).

RECEIVED
OCT 10 2017
Clerk of Court
U.S. District Court, ND-OH

JUDGE HELMICK

MAG. JUDGE GREENBERG

Demetrious A. Frett A620151
Richland Correctional Inst.
1001 Olivesburg Raod
P.O. Box 8107
Mansfield, OH 44905

FILED
OCT 10 2017
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

CASE SUMMARY:
PROCEDURAL POSTURE: Defendant, after he had been convicted of rape in the first degree, filed an application to conduct DNA testing of evidence supposedly taken from the rape victim's as said and moved to vacate his conviction. Defendant argued that the technological advance in DNA analysis of physical evidence seven years after the crime occurred justified vacating his conviction and dismissing the underlying indictment.

OVERVIEW: Defendant was convicted of first-degree rape on three (3) counts and sentenced to a consecutive 30 years of mandatory time which was not made allied offenses. During the investigation of the crime physical evidence was not stored at a laboratory nor any rape kit tests. Some years after the conviction, defendant due to a plea of guilty this was to no avail in the courts. The court denied the motion for testing, holding that the vacating of the conviction and dismissal of the underlying indictment were not justified due to the plea of guilty. The evidence would be of such character as to create a probability that had the evidence been favorable to the defendant.

CRIMINAL LAW & PROCEDURE: Constitutional violation that have caused false imprisonment that the courts have argued in the 6th amendment imposes on counsel a duty to investigate, because reasonable effective assistance must be based on professional decisions, and informed legal choices can only be made after investigations of options, and facts have been discovered.

The court has observed that counsel's investigatory decisions must be assessed in light of the information known at the time of the decisions, not in the hindsight as in the current status, following a detective indictment, that caused this tained conviction.

The prosecutor never did prove beyond the reasonable doubt that the defendant committed any alleged criminal act in the summer of 2008, and thru the years 4/10/06 to 12/13/10.

The prosecutor has significant, persuasive force, with the JUDGE'S as well as with the juries. In most every case they seek to prosecute, their fact finding facilities is considered to render faultless information, in this is not true either, cause under U.S. vs Mohnoey 949, F. 24, 1397, 1497 (6th Cir. 1991) states that the prosecutor has a great deal of considerable, disiderable, discretion. There is no limit to the prosecutor's discretion, yet the judiciary has a reasonable responsibility to protect individuals from prosecutorial misconduct for any, and all violation of the constitutional rights.

This requirement to prove beyond any reasonable doubt is needed to be clearly displayed before both juries, the grand jury first, in order to bring about a completely informative indictment, secondly the trial, that need all the elements they need to know to prove any doubt, thus this was never done, nor was it ever going to be done since all the fact never was done to be handed over to the court.

EVIDENCE-SCIENTIFIC EVIDENCE-DNA:

Given the comlexity of the DNA multisystem identification tests and the powerful impact that they may have on a jury, it is essential there be a preliminary, critical examination of the actual testing of the procedures performed in a particular case. There is a three-tier approach to admissibility: (1) detemine whether the scientific community generally accepts the theory that DNA tests produce reliable results; (2) determine whether techniques currently exist in DNA testing that are generally accepted by the scientific community and which are capable of producing reliable results; and (3) determine whether the laboratory that performed the tests used these techniques in analying the sample.

May a technological advance in the nature of DNA analysis of physical evidence seven years after a crime justify vacating a conviction for that crime and dismissing the indictment. In a case of apparent first impression in the State, the court would answer in the affirmative.

In the Sex Crimes/ Child Abuse Unit report clearly states that there was NOT any rape kit test taken as to NO evidence of any recent tears or trauma of anykind; dated 10/22/2010, 10-326785 complaint No., and taken by investigating officer Alan Strickler 1093 2nd platoon car 8177 and approved by Lt. Michael Baumiller, OIC.

During the pre-trial, in addition to the victim's impact statements the People did not introduce the results of the forensic evaluation of the physical evidence, the results are inconclusive: Although semen was never found, clothing or taken from the victim's and on a gauze pad and slide for the Rape Evidence Kit, the prosecution was unable to show the semen or any evidence belonged to the defendant.

The victim's were taken to receive an exam that revealed there was NO evidence of anykind as to these are minor children and a thirteen year old female which was 10, 11 and 13 teen at the time that they are talking about. The 10 & 11 year old minors would have needed immediate medical attention and the 13 teen year old female was sexually active before this crime as stated in her statement before meeting the defendant, as to all the elements must meet the Ohio Loc. Rules.

In testing this case, the Federal DNA test will find to be sufficient for comparison. The prosecutor fact-finding conclusion will be insufficient to continue the defendant conviction. As a result, forensic laboratory will be able to exclude the defendant as the source of the crime. Based on these results, defendant moves to vacate the judgment of conviction.

This case involves the defendants wife who is one of the victim's and his biological daughter and his ex-wife daughter which none of the victims placed the crime of rape on him. The mother of his biological child placed the crime and it that was dismissed, and the case pushed forward still.

Implicit in this standard is that the newly discovered evidence be admissible. Were the People to contest admissibility of the DNA results, a hearing would appear to be require (see, CPL 440.30 (5); see, e.g., People v Castro, 144 Misc 2nd 956; People v Wesley, 140 Misc 2d 306). As the court observed in Castro (supra, at 960), "given the complexity of the DNA multi-system identification tests and the powerful impact that they may have on a jury" it is essential there be "a preliminary, critical examination of the actual testing procedures performed in a particular case." Castro suggested a three-tier approach to admissiblity: (1) determine whether the scientific community generally accepts the theory that DNA tests produce reliable results; (2) determine whether techniques currently exist in DNA testing that are generally accepted by the scientific community and which are capable of producing reliable results; and (3) determine (***7) whether the laboratory that performed the tests used these techniques in analyzing the samples in this case (People v Castro, supra, at 959-960; see also, United States v Two Bulls, 918 F 2d 56, 59, 61 (adopting similar standard).

Even assuming, arguendo, the first two issues are now sufficiently established by consensus within the scientific and legal community as to obviate the need for a hearing on those issues, the People would still be entitled to challenge the adequacy of forensic laboratory procedures, methodology, and quality control generally and in this case specifically (People v Castro, supra; People v Wesley, supra).

Indeed, such areas would seem especially relevant for inquiry given the size and age of the sample, the possibility of the sample's and the fact that the sample was not obtained for the purpose of conducting DNA testing. The concern over the population statistics, discussed above, would apperently not be an issue since there was not a match of DNA found.

This evidence is material to the question of the defendant guilt. Forensic Laboratory of the Cleveland Police Department use by the People for DNA profiling in cases and examined by Joseph Serowick a scientific examiner. An attack on Forensic methodology or its application here could undermine the People's position in future cases that the laboratory DNA analysis should be admitted. Pursuant to (R.C. 2953.72).

Under the curcumstances, the court is constrained to assume that were the DNA results in this case submitted at a trial, they would be admitted to the grand jury without objection by either side. The effect of such an unqualified submission would have to be substantial (United States v Jakobetz, 747 F Supp 250, 263). The court, therefore, finds that the defendant has met the standard for vacatur under CPL 440.10 (1)(g) based upon newly discovered evidence (see also, CPL 440.10 (5)(a). The DNA analysis could not have been produced at pre-trial with due diligence and it is of such character as to create a probability that had such evidence been received at pre-trial the verdict would have been favorable to the defendant because it would have strongly impeached the credibility of the victim's identification.

To have convicted the defendant, the court would either have had to discount the DNA analysis or ignore the victim's statements, sexual or non-sexual history-- on the present record both remote possibilities. Accordingly, a motion for a DNA test and motion to vacate the judgment of conviction would be granted (see, CPL 440.30), and also see Anthony Michael Green v State of Ohio.

Contrast this case with People v McSherry in California trial court (Super Ct. LA County, Nov. 20, 1989) discussed in levy, DNA Evidence in Criminal Cases: Legal Departments (NYLJ, Apr. 25, 1990, at 1, col 1).

There, semen recovered from a rape victim was subjected to PCR analysis, but the defendant was convicted based upon eyewitness identification before the testing was completed. The results eventually exculpated the defendant and the defendant moved for a re-trial. The motion, which was opposed, was denied based on affidavits by experts "expressing the view that the PCR test had falsey exculpated the defendant and implicity questioning the readiness of PCR for use in the forensic setting as opposed to use in clinical settings for medical and biological research" (id., at 6, col 6). The court ruled the new evidence too new and open to question to infer the grand jury would have reached a different verdict. A new trial based on DNA evidence was also denied in York v State (315 Md 578, 556 A2d 230 (1989) where DNA testing was not necessarily exculpatory because the victim unlike here testified to being sexually active shortly before the rape.

(In a final portion of the opinion the court granted the prosecution's motion to dismiss the underlying indictment in the interests of justice based upon the reluctance of the victim to participate in a re-trial. However, the court denied the defendant's request, in the alternative, to dismiss the Grand Jury proceedings which requests were premissed upon the theory that the Grand Jury had known of the DNA results it would not have indicted him or, if it had, that said indictment could not be considered to be supported by legal sufficient evidence.)

Ohio Attorney General Richard Cordray began to explore the issue after Cleveland Police Chief Michael McGraph decided to submit all rape kits to state labs for testing in 2010. This case here happened in 2010 and NO rape kit tests were done of anykind to prove a crime was committed nor did either side seek DNA testing, which was needed to bring about a True Bill of Indictment at the time, presumably because, in Serowick's words, it was "extremely expensive." To be precise, $585 per tested item.

Mr. McGinty, the Chief Prosecuting Attorney, stressed that "the way the system was designed, there was no need to put any evidence on beyond the victim herself. That is the evidence, so anyone can accuse people of rape at anytime without proof. Reminding that the exam and courts, prosecutor's did not identify a single pubic hair from any victim, and there was no evidence of the victim's underwear, no fingerprints, and no semen or blood from the hospital exam after the alledged rape.

A Federal DNA test would eliminate the defendant as the rapist herein this case and the basic evidence here is a reasonable doubt that, Demetrious A. Frett, is not a rapist. That is the case, that is the evidence. In light of the 253 exonerations established through DNA testing to date and counting, I believe that a consistent claim of innocence should earn some consideration on the decisions that are made throughout the justice process.

For example, this should be a strong argument in support of a request to release any DNA evidence that could prove guilt or innocence, whether the request is made while the convict is in prison or after completion of the sentence. When prosecutors rigidly oppose release of evidence for testing in cases in which a person has consistently claimed innocence- especially when they ask to have the jury dicide it all, have a trial, confront the accuser's and if at significant personal cost- I have to assume that the prosecutor is more interested in preserving a record than in pursuing truth, because can you just imagine being in prison for a crime you did not commit, like this. See Anthony Michael Green Couyahoga County and officiallyexonerated on the 18th of 2001 and released on October 9th, 2001 after serving thirteen years of wrongful imprisonment.

COCLUSION:
Since 1994 in Ohio, these men were exonerated of rape and these are a few:

1994 – Brian Piszczek

1996 – Walter Smith

2001 – Anthony Michael Green

2001 – Danny Brown

2005 – Clarence Elkins

2005 – Donte Booker

2008 – Robert McClendon

2009 – Joseph Fears Jr.,.

Whereas, the defendant herein is another case were there is not any evidence to support a rape crime in the State of Ohio and as to law all the elements of rape as well as the rape kit test must be there to sustain a conviction. This <u>Federal Habeas Corpus with a Mandate Attached with Mandatory Federal DNA Test</u> should be granded in light of there being <u>NO</u> rape kit testing nor <u>DNA</u> testing in the investigation to take to the Grand Jury to pass a True

Bill of Indictment. Upon the successful outcome of the DNA test that will exonerate the defendant, he pray for an order to release him from further incarceration.

                                                              Demetrious A. Frett A620151

CERTIFICATE OF SERVICE:

A certified copy and a true Federal Habeas Corpus with a Mandate Attached with a Mandatory Federal DNA Test has been sent by U.S regular mail to the Clerk of The United States District Court, at 801 West Superior Avenue, Cleveland, Ohio 44113-1830 on this 3 day of October 2017.

                                          Respectfully Submitted,
                                          Demetrious A. Frett A620151

Sworn to and subscribed in the presence of a duly commission Notary Public on this 03rd day of October, 2017.

                                          Notary Public

CIANI C. BISHOP
NOTARY PUBLIC
FOR THE
STATE OF OHIO
My Commission Expires
July 20, 2021

TRUTH AFFIDAVIT

I, Demetrious A. Frett, in the State of Ohio, a republic everything must be discussed in truth, the whole truth, and nothing but the truth and every statement in My Affidavit is true, correct, complete, and not misleading. I am over the age of 21, have a sound mind and am able for making the following statements, and in cases everything must be stated in order for resolving the matter.

Every statement in the Federal Habeas Corpus with a Mandate Attached with a Mandatory Federal DNA Test is the truth to the best of knowledge.

Demetrious A. Frett A620151
Richland Correctional Inst.
1001 Olivesburg Road
P.O. Box 8107
Mansfield, OH 44905

Sworn to and subscribed in the presence of a duly commission Notary Public on this 3rd day of October, 2017.

CIANI C. BISHOP
NOTARY PUBLIC
FOR THE
STATE OF OHIO
My Commission Expires
July 20, 2021

Notary Public